UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOESEPH SOUTHWELL and JERRY BLAND,<br><br>Plaintiffs,<br><br>v.<br><br>MORTGAGE INVESTORS CORPORATION OF OHIO, INC.,<br><br>Defendant. | CASE NO. C13-1289 MJP<br><br>ORDER ON MOTION TO DISMISS |

This matter comes before the Court on Defendant's motion to dismiss Plaintiffs' claims under Washington State's Do Not Call provision, RCW 80.36.390, as preempted by the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. (Dkt. No. 18.) Having reviewed the motion, Plaintiffs' response (Dkt. No. 21), and Defendant's reply (Dkt. No. 23), and all related papers, the Court DENIES the motion to dismiss because the Washington Do Not Call provision is neither expressly nor impliedly preempted.

ORDER ON MOTION TO DISMISS- 1

**Background**

This putative class action concerns the telemarketing practices of Defendant Mortgage Investors Corporation. Class representatives Joseph Southwell and Jerry Bland claim they received repeated calls to their cellular phones encouraging them to refinance their home loans—even after they advised Defendant they no longer wished to receive the calls. (Compl. ¶¶ 1.1–1.2, 2.2–2.6., Dkt. No. 1 at 7–9.)[1] Bland claims the calls violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, and Do Not Call regulations, 47 C.F.R. § 64.1200(c)–(f), because his number was listed on the national Do Not Call list. (See Compl. ¶¶ 2.5, 4.1–4.2, Dkt. No. 1 at 9, 12.) Plaintiffs further claim calls to Southwell and Bland violated the "internal" do-not-call-list provisions of the federal Do Not Call regulations, and calls to Bland violated RCW 80.36.390. (See Compl. ¶¶ 2.4–2.6, 4.1–5.2, Dkt. No. 1 at 8–9, 12.)

Defendants ask the Court to dismiss the state law claim, arguing the statute is both expressly and impliedly preempted by the TCPA and the federal Do Not Call regulations. (Dkt. No. 18 at 9–25.) Defendants also want the Court to defer to the FCC's interpretation of the TCPA's preemptive effect. (Id. at 18–22.) Plaintiffs argue the presumption against preemption of state law applies (Dkt. No. 21 at 9–11), the statute is saved under the TCPA's express savings clause (id. at 11–14), the Court need not defer to the FCC (id. at 16–17), and the TCPA and federal regulations do not impliedly preempt the statute (id. at 14–16).

---

[1] The Court notes that Plaintiff Southwell's first name appears to be misspelled in the caption for the case.

**Discussion**

I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). Federal preemption of state law is a grounds for dismissal. See <u>Whistler Invs., Inc. v. Depository Trust & Clearing Corp.</u>, 539 F.3d 1159, 1168 (9th Cir. 2008).

There are three classes of preemption: express, conflict (a type of implied preemption), and field preemption (also a type of implied preemption). See <u>Valle del Sol v. Whiting</u>, 732 F.3d 1006, 1022 (9th Cir. 2013).

In all preemption cases, "the purpose of Congress is the ultimate touchstone." <u>Wyeth v. Levine</u>, 555 U.S. 555, 565 (2009). Where Congress has legislated in a field which the states have traditionally occupied, the Court's analysis must begin with a presumption that Congress did not intend to preempt a state's traditional police powers. <u>Id.</u> Since consumer protection is a field traditionally regulated by the states, the presumption applies in this case. See <u>Arguayo v. U.S. Bank</u>, 653 F.3d 912, 917 (9th Cir. 2011). Only a "clear and manifest purpose" of Congress to preempt state law can overcome the presumption. See <u>Wyeth</u>, 555 U.S. at 565.

II. Express Preemption

The parties focus their express preemption discussion on the impact of the TCPA's savings clause. Indeed, the TCPA does not contain an independent express preemption provision, but only a savings clause. The savings clause provides in part:

> (f) Effect on State law
>     (1) State law not preempted
>         Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection [provisions not relevant here], nothing

>     in this section or in the regulations prescribed under this section shall preempt any
>     State law that imposes more restrictive intrastate requirements or regulations on,
>     or which prohibits—
>         (A) the use of telephone facsimile machines or other electronic devices to
>         send unsolicited advertisements;
>         (B) the use of automatic telephone dialing systems;
>         (C) the use of artificial or prerecorded voice messages; or
>         (D) the making of telephone solicitations.

47 U.S.C.A. § 227(f). Because the TCPA contains a savings clause expressly permitting certain types of state laws, Defendant contends other state laws not covered in the savings clause are expressly preempted. (See Dkt. No. 18 at 12 ("[T]he TCPA's savings clause places an express limitation on the authority of states to enact legislation pertaining to interstate telemarketing calls.")) Even assuming provisionally that the TCPA savings clause does not cover the Washington Do Not Call provision here, this argument fails.

Express preemption occurs when the language of the statute explicitly states that the federal law has a preemptive effect. See Arguayo, 653 F.3d at 918 ("Congress may preempt state law by so stating in express terms"). Here, the TCPA does not say what state laws are preempted; it instead says certain state laws are not preempted. See Van Bergen v. Minnesota, 59 F.3d 1541, 1547–48 (8th Cir. 1995). In other federal statutes a narrow savings clause is sometimes preceded by a broad preemption clause—thus permitting the inference that items not subject to the savings clause fall under the express preemption clause. See, e.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44–45 (1987) (describing ERISA statutory scheme). Here, Defendant cannot point to any language subjecting state laws omitted from the savings clause to preemptive effect. See Van Bergen, 59 F.3d at 1548; Sussman v. IC Systems Inc., 928 F. Supp. 2d 784, 790 (S.D.N.Y. 2003). Contrary to Defendant's characterization of the doctrine, express preemption is explicit; it does not function by logical "corollary." (See Dkt. No. 18 at 18.)

ORDER ON MOTION TO DISMISS- 4

Defendant's attempt to read between the lines of the savings clause also contradicts the presumption against preemption. See Ishikawa v. Delta Airlines, 343 F.3d 1129, 1132–33 (9th Cir. 2003) (noting that the presumption against preemption stands in the way of any inference that a savings clause carries a "negative pregnant" preempting state law). The presumption against preemption can only be defeated by the "clear and manifest purpose of Congress," which cannot be shown by a negative inference. See Wyeth, 555 U.S. at 565. Because the cases cited by Defendant in support of the TCPA's broad preemptive effect either do not acknowledge the presumption against preemption or are based on reasoning about the presumption later undermined by the Supreme Court, this Court finds them unpersuasive. For example, Chamber of Commerce v. Lockyer held that the presumption against preemption does not apply in telecommunications, but its reasoning about the effect of federal legislation in the area was undermined by Wyeth, 555 U.S. at 565 n.3. See No. 2:05-CV-2257MCEKJM, 2006 WL 462482, *6–7 (E.D. Cal. Feb. 27, 2006).

 Although Defendant discusses the FCC's interpretation of the TCPA as part of its express preemption argument (see Dkt. No. 18 at 20–22), the FCC interpretation uses language from the test for conflict preemption, not express preemption. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 68 Fed. Reg. 44144, 44155 (2003) ("We therefore believe that any state regulation of interstate telemarketing calls that differs from our rules almost certainly would conflict with and frustrate the federal scheme and almost certainly would be preempted.") (emphasis added). The Court will address the FCC Order in its discussion of conflict preemption.

III.     Conflict Preemption

Of the two varieties of implied preemption, Defendant does not argue field preemption, presumably because the TCPA's express savings clause indicates Congress could not have intended to supplant all state law in the area. See Palmer v. Sprint Nextel Corp., 674 F. Supp. 2d 1224, 1229 (W.D. Wash. 2009). Rather, Defendant bases its argument for implied preemption on conflict preemption, which occurs when "compliance with both federal and state regulations is a physical impossibility" or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." United States v. Arizona, 132 S. Ct. 2492, 2501 (2012) (quotation marks and citations omitted). Defendant concedes complying with federal law and RCW 80.36.390 is not impossible (see Dkt. No. 23 at 12), so it argues Washington's Do Not Call provision stands as an obstacle to the accomplishment and execution of Congress's purposes. Defendant frames this question by claiming Congress's purpose was to create a uniform scheme of interstate telemarketing regulation. (See Dkt. No. 18 at 24; Dkt. No. 23 at 12.)

Contrary to Defendant's narrow framing of the issue, both RCW 80.36.930 and the TCPA primarily reflect a desire to protect consumer privacy rights. See Act of Apr. 3, 1986, ch. 277, 1986 Wash. Laws 1136 (reflecting the Washington legislature's concern that telephone solicitations "interfere with the legitimate privacy rights of citizens of our state"); S. Rep. No. 102-178, 1991 WL 211220, at *1 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968 (stating the Senate's interest in "protect[ing] the privacy interest of residential telephone subscribers"). In its findings, Congress stated its broad objectives as follows: "Individuals' privacy rights, public safety interests, and commercial freedoms of speech must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." See Telephone Consumer

Protection Act of 1991, Pub. Law. 102-243, 105 Stat. 2394. There is no evidence that Congress understood "permit[ting] legitimate telemarketing practices" to require a uniform regulatory scheme for interstate telemarketing. The FCC—which had resisted the regulation of telemarketing prior to the TCPA (see S. Rep. No. 102-178, at *3)—announced in 2003 that Congress's intent in enacting the TCPA over a decade earlier was "to promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations." FCC Order at ¶ 61. But Defendant "does not explain how this rule-making process could possibly reflect congressional intent in 1991 or otherwise define the purposes and objectives of the statute." Hovila v. Tween Brands, Inc., No. 09-cv-0491 RSL, 2010 WL 1433417, at *10 (Apr. 7, 2010). Apparently the FCC hoped to create a more uniform scheme for interstate telemarketing through its regulations. But the intent to create an entirely uniform scheme cannot be reconciled with the statute's express savings clause, which even applies to state laws with interstate effects. See, e.g., Hickey v. Voxernet LLC, 887 F. Supp. 2d 1125 (W.D. Wash. 2012).

      Regardless of any tension between federal and state purposes, conflict preemption is not focused only on convergent or divergent purposes, but rather on the effects of the state law. See Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 107 (1992). There are two aspects of RCW 80.36.390 that differ from the federal regulations and could produce different effects.

      First, while the federal regulations allow a thirty-day grace period from enforcement of an individual's company-specific do-not-call request, the Washington statute offers no such forbearance. Compare 47 C.F.R. § 64.1200(d)(3) with RCW 80.36.390(3). The federal regulations nonetheless require an individual's company-specific request to be recorded on the

internal do-not-call list "at the time the request is made." 47 C.F.R. § 64.1200(d)(3). As the FCC acknowledged in its Order ten years ago, technological advances at that time were making speedy compliance with company-specific do-not-call-requests possible. FCC Order ¶ 68. Since federal regulations also require that "telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so," 47 C.F.R. § 64.1200(d)(3), the practical difference between the two requirements is at most negligible. Washington's lack of a thirty-day grace period, therefore, does not pose an obstacle to the objectives of either Congress in passing the TCPA or the FCC in promulgating the internal do-not-call regulations.

Second, RCW 30.80.390 requires telemarketers to identify themselves and the entities they represent within the first thirty seconds of a call. Defendant claims this conflicts with 47 C.F.R. 64.1200(d), which requires the same identification but does not specify a time period for the identification to occur. (Dkt. No. 18 at 25.) These requirements are too similar to produce widely divergent practices—much less to impede Congress's objectives in protecting consumers while continuing to permit telemarketing.

Defendant urges the Court to defer to the FCC's interpretation of the statute and regulations' preemptive effect. In its 2003 Order, the FCC stated, "We therefore believe that any state regulation of interstate telemarketing calls that differs from our rules almost certainly would conflict with and frustrate the federal scheme and almost certainly would be preempted." FCC Order at ¶ 62. The Order continued, "We will consider any alleged conflicts between state and federal requirements and the need for preemption on a case-by-case basis." Id. (The FCC has not issued any such orders.) Chevron deference applies to agency interpretations of ambiguous statutes; an agency's opinion on the constitutional doctrine of preemption does not require the same deference. See Wyeth, 555 U.S. 555, 556–57. Rather, the weight accorded to an agency's

explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness. Id. Here, the FCC's opinion about the sweeping effect of federal law is contradicted by the TCPA savings clause. Even if the Court accords the FCC some deference, the agency's caution that alleged conflicts would be examined on a case-by-case basis undermines the conclusion that preemption is required in this particular case. Because the state law at issue here does not conflict with or frustrate the federal scheme, it is not preempted.

### IV.     Effect of the TCPA Savings Clause

Although the parties dedicate a large portion of their briefs to the whether Washington's statute is expressly saved by the TCPA's savings clause, the Court finds it unnecessary to decide the question because there is no evidence that the provision would be preempted even in the absence of the savings clause.

### Conclusion

Washington's Do Not Call provision, RCW 80.36.390, is not expressly preempted because there is no express preemption clause and, due to the presumption against preemption, a savings clause cannot expressly preempt state law. In addition, the provision is not impliedly preempted because it does not conflict with or frustrate the objectives of the federal law. The Court therefore DENIES Defendant's Motion to Dismiss (Dkt. No. 18).

The clerk is ordered to provide copies of this order to all counsel.

Dated this 14th day of November, 2013.

Marsha J. Pechman
Chief United States District Judge