1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 JOESEPH SOUTHWELL, et al.,                CASE NO. C13-1289 MJP

11                         Plaintiffs,        ORDER ON MOTION FOR CLASS
                                             CERTIFICATION
12        v.

13 MORTGAGE INVESTORS
   CORPORATION OF OHIO, INC., et al.,
14
                          Defendants.
15

16

17     The Court has received and reviewed Plaintiffs' Motion for Class Certification (Dkt. No.

18 58), Defendants' Response in Opposition (Dkt. No. 98), Plaintiffs' Reply in Support (Dkt. No.

19 110), Defendants' Surreply Brief in Opposition (Dkt. No. 181), and all the relevant supporting

20 documents and exhibits in this record, and rules as follows:

21     IT IS ORDERED that Plaintiffs' motion for class certification is DENIED.

22                                    **Background**

23     This is a putative class action under the federal Do Not Call regulations pursuant to the

24 Telephone Consumer Protection Act ("TCPA;" 47 U.S.C. § 227) and the Washington Telephone

MOTION FOR CLASS CERTIFICATION - 1

Solicitation Act ("WTSA;" RCW 80.36.390) challenging interstate telemarketing calls initiated

by Defendant .  Plaintiffs propose by their motion to certify the following three classes:

1.  <u>Washington Class</u> ("WTSA Class"): All Washington persons who received two or more commercial solicitation calls from Defendant or its agents within a year of the date they asked not to be called again;
2.  <u>National Do-Not-Call Class</u> ("NDNCR Class"):  all persons registered on the National Do-Not-Call Registry who received more than one call from Defendant within any twelve-month period;
3.  <u>Internal Do-Not-Call Class</u> ("IDNCR Class"): All persons who were on Defendant's Internal Do-Not-Call Registry because such persons had requested Defendant to stop calling, when the calls were received.

Pltf Mtn, p. 10.

<strong>Discussion</strong>

The parties have fully briefed Plaintiffs' motion to certify the above classes.

Additionally, in light of certain evidentiary problems and procedural irregularities, the Court has

taken the unusual step of permitting Defendants to file a surreply to address evidence raised for

the first time in Plaintiffs' reply brief.

<u>Standard of Proof for Class Certification</u>

Class certification is proper if and only if "the trial court is satisfied, *after a rigorous*

*analysis*," that Plaintiffs have met their burden under Rule 23.  <u>Wal-mart Stores, Inc. v. Dukes</u>,

131 S.Ct. 2541, 2551 (2011)(emphasis supplied).

For reasons that will become obvious in the succeeding section, the Court discusses the

issue of the standard of proof required for establishing each element required for class

certification.   While the Ninth Circuit has yet to enunciate an evidentiary benchmark in the area

of proof of the elements of class certification,[1] this Court finds itself in need of such a standard and chooses to align itself with the emerging trend in other districts toward the adoption of a preponderance of the evidence standard for facts necessary to establish the existence of a class. *See* Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 307 (3d Cir. 2009); In re Mills Corp. Securities Litigation, 257 F.R.D. 101, 104 (E.D. Va. 2009); Alaska Elec. Pension Fund v. Flowserve Corp., 572 F.3d 221, 234 (5th Cir. 2009); Wilkof v. Caraco Pharmaceutical Laboratories, Ltd., 280 F.R.D. 332, 338 (E.D. Mich. 2012); Messner v. Northshore University HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012); Walsh v. Principal Life Ins. Co., 266 F.R.D. 232, 240 n.7 (S.D. Iowa 2010); Local 703, I. B. of T. Grocery and Food Employees Welfare Fund v. Regions Financial Corp., 282 F.R.D. 607, 612 (N.D. Ala. June 14, 2012). *See also* Keegan v. American Honda Motor Co., Inc., 284 F.R.D. 504 (C.D. Ca. June 12, 2012)(applying the preponderance standard despite "no Ninth Circuit authority that directs use of a preponderance standard in deciding class certification motions" because it is the "general standard of proof used in civil cases").

FRCP 23(a) criteria

The four criteria required to be established under 23(a) – numerosity, commonality, typicality and adequacy of representation – are stated in the conjunctive, necessitating that all

---

[1] *See* Connecticut Retirement Plans and Trust Funds v. Amgen Inc., 660 F.3d 1170, 1175 (2012)(noting that because certain Rule 23 requirements were "uncontested, we need not decide the applicable standard of proof for proving these elements at the class certification stage.")

1    four be proven satisfactorily.  (FRCP 23(a) "lists four conjunctive criteria that must be met to

2    certify a class action: numerosity, commonality of issues, typicality of the representative

3    plaintiffs' claims, and adequacy of representation. A class may only be certified if the court is

4    'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"

5    Palmer v. Stassinos, 233 F.R.D. 546, 548-549 (N.D. Cal. 2006), citing Gen. Tel. Co. of the S.W.

6    v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).)  Failure of proof in any

7    element means denial of the certification request.  "Rigorous analysis" of each element is

8    demanded.

9           It is the finding of this Court that Plaintiffs have failed to establish, on a preponderance of

10   the evidence basis, the numerosity element of their class certification proof.  This element of

11   Plaintiffs' case has been beset with problems from the outset of this motion.  As the Court noted

12   in an earlier order, "[i]n their moving papers, Plaintiffs presented essentially no factual support

13   for the 'numerosity' element of their FRCP 23(a) proof."  (Order Re-Noting Class Certification

14   Motion, Dkt. No. 169, p. 2.)  Although Plaintiffs attempted to redress this deficiency in their

15   reply brief, the untimely presentation of this evidence left Defendants with no opportunity to

16   rebut and the result was that consideration of the motion was stayed while Defendants deposed

17   Plaintiffs "numerosity experts" and drafted a surreply brief to address the adequacy of the

18   numerosity proof.

19          After failing to present any factual support for the numerosity element in their opening

20   brief, Plaintiffs devoted a single paragraph to numerosity in their reply; in fact, only a single

21   sentence indicated that they were prepared to submit any evidence in support of this element:

22   "After further analysis, Plaintiffs estimate the NDNCR Class to be approximately 157,624

23

24

MOTION FOR CLASS CERTIFICATION - 4

persons and the Internal DNC Class to be composed of approximately 181,576 persons.  Munson

Decl. ¶¶ 8-9.”  (Reply, p. 10.)

Plaintiffs’ expert evidence is propounded by Jeffrey Munson, PhD. , a Research

Associate Professor of Psychiatry and Behavioral Sciences at the University of Washington.

According to Dr. Munson’s declaration, he received a series of databases from Plaintiffs’ counsel

containing information described as “Internal DNC List,” “Fed DNC List,” “Call History Data,”

“Email Data,” and “Opt-In Data.”  After importing that data into a SQL database, he screened

the email data to include only “emails with filenames like: “irate,” “purge,” “remove,” or

“dnc*load.”   (Munson Decl., ¶¶ 1-7.) He then ran SQL inquiries based on parameters such as:

> Identify the unique phone numbers on the Fed DNC List that received two or
> more calls after the Fed DNC List time stamp within any 12-month period *using
> the earliest date if there were multiple dates) and either have no “D” entries on the
> Fed DNC List or the calls were made after an “A” entry, but prior to the earliest
> “D” entry.
>
> ***
>
> Identify the unique phone numbers on the Internal DNC List that received two or
> more calls after an Internal DNC Request within any 12-month period (using
> email metadata to identify the request date and using only the earliest date if there
> are multiple dates).

(Id., ¶¶ 8-9.)  Based on his calculations, “Plaintiffs estimate[d] the NDNCR Class to be

approximately 157,624 persons and the Internal DNC Class to be composed of approximately

181,576 persons.”  (Reply, p. 10 (citing Munson Decl., ¶¶ 8-9).)

It is difficult to know where to begin in describing the lack of rigor demonstrated the

evidence which Plaintiffs have produced.  In reviewing the excerpts of Dr. Munson’s deposition

submitted by Defendants, it is clear that, whatever his qualifications as a statistical analyst,

Plaintiff’s expert had no expertise in the TCPA or “do-not-call policies or laws or practices.”

(Esposito Surreply Decl., Dkt. No. 182, Ex. A, ("Munson Depo"), pp. 14-15.)  Dr. Munson was given multiple sets of data by Plaintiffs' counsel, ran it through a series of filters using parameters set by Plaintiffs' counsel and reported on the numbers which those calculations produced.  He has no idea what the numbers represent and no independent opinion on whether they are accurate representations of what Plaintiffs purport them to mean.  (Munson Depo, p. 51.)("All my work was an assertion I was given by plaintiffs' counsel, so I have no support one way or another for, you know, sort of no legal opinion or assumption about the validity of the assumptions I was provided.")

Beyond the bare fact of the numbers themselves, Plaintiffs present no proof (nor even any argument) that the numbers accurately represent what they purport them to represent.  Additionally, there are several factors which could affect the accuracy of the totals which (as even Dr. Munson admitted) are unaccounted for: (1) whether any individuals on the National Do Not Call Register ("NDNCR") later consented to be called (i.e., "opted in"); (2) whether any of the individuals on the NDNCR were persons with whom Defendant had an existing business relationship; (3) how many phone numbers on the list were business numbers (which are not properly included on the NDNCR); and (4) how many of the calls were made within the 30-day grace period permitted for compliance with the do-not-call requests.   (Munson Depo, pp. 72-74, 80; 47 CFR  64.1200(d)(3).)  Absent this information, the Court is unable to say how many of the calls tabulated in Dr. Munson's calculations actually violated the TCPA; Plaintiffs' expert admits that he himself is unable to make that representation.  (Munson Depo, p. 67.)

Plaintiffs' claims regarding the Internal Do-Not-Call List suffer from further deficiencies.  The internal do-not-call list data which Plaintiffs received from Defendant do not contain the date on which particular requests were made.  (Munson Depo, p. 52; Response, Dkt. No. 98, pp.

3, 15.) To compensate for this, Dr. Munson created his own internal do-not-call list by screening the email list database he received for "emails with filenames like: "irate," "purge," "remove," or "dnc*load." (Munson Decl., ¶ 7.)  It is clear from Dr. Munson's declaration and testimony that the resulting subset of emails were treated as "do-not-call" requests.  However, neither Dr. Munson nor Plaintiffs provide a single justification or additional piece of corroborative evidence establishing this assumption as a fact upon which this Court can rely.

Defendant, in fact, presents evidence in the form of the deposition testimony of its President of Operations and Information Technology that "irate" was a status code that came programmed in MIC's software and could not be equated to a do-not-call request.  (Sealed Documents, Dkt. No. 102, Ex. B, Shatz Depo at pp. 78-79.)  Plaintiffs' expert admitted that, using the methodology prescribed by Plaintiffs, his database search would have turned up documents that may not or did not relate to requests not to be called.  (Munson Depo., pp. 62-64.)  Furthermore, the Court cannot help but be struck by the <u>inexactitude</u> of the phrase "emails with filenames <u>like</u>: "irate," "purge," "remove," or "dnc*load." (Munson Decl., ¶ 7; emphasis supplied.)  If the Court is not provided with <u>exactly</u> the filenames which were searched, and <u>why</u> those exact filenames were, on a more probable than not basis, likely to result in identifying do-not-call requests, how is a finding that numerosity has been established by a preponderance of the evidence possible?  The answer is, clearly, that it is not.

Plaintiffs' proof problems do not end there.  Dr. Munson also testified that the automated computer process he used to extract 10-digit series of numbers contained in the "email data" would have captured 10- digit loan application numbers and customer ID numbers, as well as phone numbers of MIC employees in the email signature blocks.  (Munson Depo., pp. 51-54, 57-58, 63-64.)  Plaintiffs' expert further admitted that he did not review the emails produced by his

search algorithm to confirm that they were in fact a do-not-call request or that the 10-digit

number was the phone number of someone who had requested not to be called.  Id., p. 57, 61-64.

Finally, the process by which Dr. Munson arrived at his estimate of the numbers of

violations generated from the "internal do-not-call list" he created suffers from the same defects

as the problems identified regarding the NDCNR List *supra*; namely, the inability to ascertain

whether the individuals had later consented to be called, whether there was an existing business

relationship between the individual and MIC, whether any given phone number was assigned to

a business, and whether the 30-day grace period for compliance had passed when the call was

made.  (Id. at pp. 72-73, 80.)  The Court cannot find, on a preponderance of the evidence basis,

that Plaintiffs have established the numerosity element of their proof based on Dr. Munson's

report.

Nor does the submission of Plaintiffs' second expert, Anya Verkhovskaya, assist the

Court in finding that the numerosity prerequisite has been met in this case.  Plaintiffs introduced

her testimony purportedly to establish that it was possible to determine (1) whether phone

numbers of the NDCNR List are business numbers (Reply, pp. 7-8), (2) whether particular phone

numbers belong to Washington residents (Id. at p. 9), and (3) the number of calls made to

particular individuals after those individuals registered on the NDCNR or made do-not-call

requests.  (Id. at pp. 11-12.)  Ms. Verkhovskaya's declaration is entirely prospective; i.e., it

simply describes what she intended to do with the data provided by Plaintiffs.  Such analysis as

this expert did perform was not performed until after the submission of the declaration.

(Esposito Surreply Decl., Dkt. No. 182, Ex. B, ("Verkhovskaya  Depo"), pp. 50-51.)  On this

basis, her declaration cannot constitute proof of the numerosity element required to establish that

Plaintiffs are entitled to prosecute a class action lawsuit.

1    Viewed from a preponderance of the evidence standard, Plaintiffs' proof of numerosity

2    fails and thus their motion for class certification fails.

3    FRCP 23(b)

4

5    In addition to meeting all four criteria of FRCP 23(a), Plaintiffs are also required to

6    satisfy one of the three categories enumerated in subdivision (b). Bateman, 623 F.3d at 712.

7    Plaintiffs seek certification under 23(b)(3) and thus must establish by a preponderance of the

8    evidence that common questions of law or fact predominate and that maintaining the suit as a

9    class action is superior to other methods of adjudication. FRCP 23(b)(3); *see also* Erica P. John

10   Fund, Inc. v. Halliburton, 131 S.Ct. 2179, 2184 (2011). "The predominance inquiry requires a

11   court to consider how a trial on the merits would be conducted if a class were certified." Gene

12   and Gene LLC v. BioPay LLC, 541 F.3d 318, 326 (5th Cir. 2008). This is a process which

13   "entails identifying the substantive issues that will control the outcome, assessing which issues

14   will predominate and then determining whether the issues are common to the class, a process that

15   ultimately prevents the class from degenerating into a series of individual trials." Id.

16   For at least two of Plaintiffs' proposed classes, the Court does not see how the issue of

17   individualized consent will not reduce the trial on the merits to a series of individualized

18   inquiries required to establish whether class members either provided consent to be called or

19   made a request for information from Defendant that is tantamount to consent.

20

21   I.    NDNCR Class:

22   As Plaintiffs point out, "[f]ederal regulations require that before a telephone solicitation

23   is made to a person on the NDNCR, the caller must obtain the subscriber's prior express

24

invitation or permission."  (Reply, p. 5.)  "Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."  47 C.F.R. § 64.1200(c)(2)(ii).

The Court agrees with Plaintiffs that Defendant appears to have presented no evidence of the existence of any signed agreements with the proposed class members which would constitute a defense to claims that it violated the NDNCR regulations.  Although Defendant claims that "MIC has produced voluminous evidence of actual consent and has raised numerous factual questions concerning consent that require individualized inquiries" (Response, p. 15), it has produced no evidence of the <u>written</u> permission required to exempt it from NDNCR restrictions. As far as the NDNCR class is concerned, consent does not appear to be a barrier to class certification.

II.      IDNCR and WTSA Classes:

Plaintiffs argue that the IDNCR regulations do not contain a provision which exempts potential violators on the basis of "consent" – that there is no mention of a defense based on written permission, invitation, or a request to be contacted.  (Reply, pp. 5-6.)  The Court does not read the regulation in the same way.  At 47 C.F.R. 1200(d), it states:

> Affiliated persons or entities. *In the absence of a specific request by the subscriber to the contrary*, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

1   (47 CFR 64.1200(d)(5))(emphasis supplied).  The regulation clearly contemplates an exemption

2   based on "a specific request to the contrary," with no restriction as to the form which the request

3   takes.

4        The WTSA contemplates a similar exemption.  The statute states:

5           **(1)** As used in this section, "telephone solicitation" means the unsolicited
        initiation of a telephone call by a commercial or nonprofit company or

6           organization to a residential telephone customer and conversation for the purpose
        of encouraging a person to purchase property, goods, or services or soliciting

7           donations of money, property, goods, or services. *"Telephone solicitation" does
        not include:*

8               *(a) Calls made in response to a request or inquiry by the called party.*

9

10  (RCW § 80.36.390(1)(a).)

11       Both of these provisions constitute "consent defenses" and raise the specter of

12  individualized inquiries which has historically proven fatal to attempts at class certification.

13  Where the issue of consent cannot be resolved on a classwide basis, the Court is unable to find

14  that common issues of fact or law predominate.  *See* <u>Gene v. Gene</u>, 541 F.3d at 326.  Defendant

15  presents evidence that it obtained consent from consumers from multiple sources: several

16  webpages, responses to mailings, spontaneous calls seeking information, or prior business

17  relationships.  (Response, pp. 12-13.)  There is no single database in which the consent

18  information upon which Defendant relied is maintained.  (<u>Id.</u> at 13.)

19       As regards the proposed IDNCR and WTSA classes, the Court finds that the issue of

20  consent cannot be resolved on a classwide basis, but would instead require individual inquiries

21  into the circumstances under which calls were placed to each potential class member.  The Court

22  cannot find, under this scenario, that common questions of fact or law predominate or that

23  maintaining the suit as a class action is superior to other methods of adjudication.  For these two

24

1    classes, Plaintiffs' proof does not meet the FRCP 23(b)(3) requirements by a preponderance of

2    the evidence.

3                                      **Conclusion**

4          Having failed to establish by a preponderance of the evidence that any of their proposed

5    classes meets the numerosity requirement of FRCP 23(a), and having similarly failed to establish

6    that the IDNCR and WTSA classes meet the requirements of FRCP 23(b)(3), the Court DENIES

7    Plaintiffs' motion for class certification.

8

9          The clerk is ordered to provide copies of this order to all counsel.

10         Dated this 12th day of August, 2014.

11

12

13                                         Marsha J. Pechman

14                                         Chief United States District Judge

15

16

17

18

19

20

21

22

23

24