|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| JOESEPH SOUTHWELL,<br><br>          Plaintiff,<br><br>     v.<br><br>MORTGAGE INVESTORS<br>CORPORATION OF OHIO, INC.,<br><br>          Defendant. | CASE NO. C13-1289 MJP<br><br>ORDER ON MOTION FOR<br>SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Mortgage Investor Corporation of Ohio's Motion for Summary Judgment. (Dkt. No. 137.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 155), and Defendant's Reply (Dkt. No. 166), and all related papers, the Court hereby GRANTS the motion in part and DENIES it in part.

## Background

Plaintiffs allege putative class representatives Southwell (Oregon) and Bland (Washington) received repeated telemarketing calls to their cellular phones from Defendant encouraging them to refinance their home loans—even after they advised Defendant they no

longer wished to receive calls from Defendant. Plaintiffs contend these requests triggered "internal" Do Not Call provisions of the TCPA (in Southwell's and Bland's case) and Washington law (in Bland's case).

Furthermore, Southwell registered his number on the National Do Not Call list on January 29, 2013, but received two calls from MIC after that date on February 14, 2013 and March 4, 2013. (Dkt. No. 155 at 9; Dkt. No. 67 at Ex. G.)

Defendant moves for summary judgment both on class-wide grounds (addressed in this Order only insofar as they affect the individual claimants, since the Court previously denied Plaintiffs' Motion for Class Certification (see Dkt. No. 189)) and on individual grounds.

On all TCPA counts, Defendant argues it benefits from the TCPA's safe harbor provision for entities meeting certain enumerated standards. (Dkt. No. 137 at 20–26.) See 47 C.F.R. § 64.1200(c)(2)(i).

On Southwell's claims, Defendant argues his cellular phone number was used for business purposes (Southwell's farm) in addition to as his residential number, and that the TCPA regulations apply only to residential numbers. (Dkt. No. 137 at 28.) In addition, Defendant claims Southwell provided company-specific consent by providing his phone number to MIC on a loan application. (Dkt. No. 137 at 29; Dkt. No. 138-1 at 27.)

On Bland's TCPA National Do Not Call Registry claims, Defendant points out Bland has already conceded his number was not registered on the NDNCR at the relevant period. (Dkt. No. 137 at 29; Dkt. No. 56 at 5.) On Bland's internal Do Not Call claims (Washington and federal), Defendant argues he provided consent online through various websites including expedia.com and washingtonpost.com. (Dkt. No. 138-1 at 36-37.)

**Discussion/Analysis**

I.  Legal Standard

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). All material facts alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.  Safe Harbor

Defendant argues it should benefit from the TCPA's safe harbor provision, which precludes liability for entities that "can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:

> "(A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
>
> (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
>
> (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

ORDER ON MOTION FOR SUMMARY JUDGMENT- 3

(D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

(E) Purchasing the national do-not-call database. It uses a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers; [. . .]"

47 C.F.R. § 64.1200(c)(2)(i).

Defendant lists a number of ways it has attempted to comply with the safe harbor requirements, including having a written Do Not Call policy, conducting formal training for telemarketers, purchasing Do Not Call lists, and purging the phone numbers of persons who demanded not to be called. (See Dkt. No. 137 at 10–16, 21–24.) However, some of the material it submitted is contradictory. Defendant claims it has written procedures and trains its personnel in the Do Not Call procedures, but at least one training document it offered in support of its Motion appears to direct its employees to ignore or redirect requests not to be called. (See Dkt. No. 142 at 18.)

In addition, there remain disputed issues of material fact as to whether Defendant consistently complied with (D), using a process to prevent calls to persons on the NDCR, and as to whether apparent individual violations were "a result of error," as required by the safe harbor exception. See 47 C.F.R. § 64.1200(c)(2)(i). (See also Bland Call History, Dkt. No. 67, Ex. E at 12–13; Southwell Call History, id., Ex. G at 36.) Plaintiff offers evidence that during "opt-in" campaigns, where Defendant obtained numbers from third party lead generators and other sources, Defendant intentionally turned off its do-not-call lists. (Cleveland Dep., Dkt. No. 62-1 at 83–86; Shatz Dep., Dkt. No. 66 at 40.) Whether the type of consent Defendant obtained from Plaintiffs was effective and postdated internal or national Do Not Call requests remains in dispute, as described further below.

### III.   Southwell

Defendant's claim that Southwell's cellular phone number is not a residential number is based on the deposition of Southwell's wife Crystal Moon, who stated that her husband occasionally sells sheep to friends using his cell phone. (Dkt. No. 138-1, Ex. I, 54:20–56:6.) Defendant has not established that the farm is incorporated as any kind of business entity or that Southwell earns any profit from the farm. (See id. at 56:10–23.)

Defendant argues the TCPA is restricted to calls made to a "residential telephone subscriber," 47 C.F.R. § 64.1200, and that since Southwell uses his cellular phone "in connection with his business," the TCPA does not apply. (Dkt. No. 137 at 27–28.) The only case law Defendant cites is Primavera v. Drexen, No. 080922890, 2009 WL 3554582 (Utah D.C. Oct 26, 2009), an unpublished state court case of no precedential value. Plaintiff disputes that Southwell's farm and sale of sheep to friends constitutes a business, and furthermore points out the FCC has "decline[d] to exempt from the do-not-call rules those calls made to 'home-based businesses.'" Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991 ("2005 TCPA Rules"), 70 Fed. Reg. 19,330, 19,331 (April 13, 2005). Plaintiff is correct that Southwell is a "residential telephone subscriber" under the TCPA.

Defendant further argues Southwell gave his consent to be called by MIC in addition to establishing a business relationship with MIC by providing his phone number on a loan application with MIC on March 26, 2012 in order to obtain "final closing numbers." (Esposito Decl., Dkt. No. 138 at 10; id., Ex. H at 39.) But such a consent is only even arguably effective until the time it is revoked, see Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir. 2012), and business relationships can be ended with a request not to call as well. See 47 C.F.R. § 64.1200(f)(5)(1); 2005 TCPA Rules at 19,333. Plaintiff contends Southwell revoked his consent on numerous subsequent occasions, as shown by dated "purge slip" emails describing Southwell's number as that of an "IRATE" customer. (Southwell Decl., Dkt. No. 59 at 2; Dkt. No. 67, Ex. F at 15–34; Cleveland Dep., Dkt. No. 62-1 at 77–79.) When the evidence is viewed in the light most favorable to Southwell, Defendant has not shown as a matter of law that the phone number Southwell provided on his initial loan application for the purpose of giving Southwell and Moon "final closing numbers" had the effect of providing MIC with consent as to all future calls, including those that followed an apparent company-specific do not call request.

IV.     Bland

As this Court has previously acknowledged, Defendant has shown as a matter of law that the cellular phone of Plaintiff Bland was not registered on the NDCR during the relevant time period. (See Dkt. No. 56 at 5.)

Bland also asserts Washington and federal internal Do Not Call violations. Again Defendant asserts Bland has given consent for calls from MIC, this time through multiple websites including expedia.com and washingtonpost.com. (Dkt. No. 138-1 at 36-37.) Plaintiffs

contest both the characterization of this alleged consent and/or the identity of the person who provided it. (See Bland Decl., Dkt. No. 158 at 2.) Defendant has not satisfactorily explained how websites neither owned nor operated by MIC provided Bland with an opportunity to give company-specific consent. Further, Defendant faces the same issue with Bland as it did with Southwell: consent can be revoked, and Bland may have done so here. (See Dkt. No. 67, Ex. E at 12–13; Dkt. No. 158 at 2.)

**Conclusion**

Because Plaintiffs have pointed to disputed material facts regarding both Defendant's assertion of the safe harbor defense and specific defenses to Southwell's claims and Bland's Washington and internal Do Not Call claims, the Court DENIES Defendant's Motion for Summary Judgment as to those claims and GRANTS Defendant's Motion as to Bland's federal Do Not Call registry claim.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 14th day of August, 2014.

Marsha J. Pechman
Chief United States District Judge